**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LAUREL HILL MANAGEMENT SERVICES, INC.; MINIMALLY INVASIVE SURGICAL ASSOCIATES; and ADVANCED WEIGHT LOSS SURGICAL ASSOCIATES,

Plaintiffs,

v.

LA-Z-BOY INCORPORATED; BLUE CROSS BLUE SHIELD OF MICHIGAN; and DOES 1-10,

Defendants.

Case No. 2:24-cv-13230-DML-KGA
Hon. David M. Lawson
Magistrate Judge Kimberly G. Altman

---

THE LAW OFFICE OF
JONATHAN A. STIEGLITZ
Jonathan A. Stieglitz
11845 W. Olympic Blvd., Ste. 800
Los Angeles, CA 90064
(323) 979-2063
jonathan@stieglitzlaw.com
*Attorney for Plaintiffs*

HONIGMAN LLP
Matthew G. Mrkonic (P79406)
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7614
mmrkonic@honigman.com
*Attorneys for Defendant La-Z-Boy*

Rudolph Makupson (P73646)
Office of General Counsel, BCBS
600 E. Lafayette
Detroit, MI 48226
(313) 255-9393
rmakupson@bcbsm.com
*Attorney for Defendant BCBS*

---

**PLAINTIFFS' OMNIBUS BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**


TABLE OF CONTENTS ........ 2

TABLE OF AUTHORITIES ........ 3

STATEMENT OF ISSUES PRESENTED ........ 7

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........ 8

I. INTRODUCTION ........ 9

II. STATEMENT OF THE CASE ........ 10

III. LEGAL STANDARD ON 12B6 MOTION TO DISMISS ........ 13

IV. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA ........ 13

A. Plaintiffs' Claims Are Not Preempted By ERISA Section 502 Or Complete Preemption. ........ 14

B. Plaintiffs' Claims Are Not Preempted By Section 514 Express/Conflict Preemption. ........ 16

1. History of ERISA Section 514 Jurisprudence ........ 16

2. As Applied to Plaintiffs' Complaint, There Is Neither "Reference to" Nor "Connection With" Section 514 Preemption ........ 19

a. No "reference to" preemption ........ 19

b. No "connection with" preemption ........ 22

C. BCBS' Standing Argument Completely Misses The Mark And Further Supports The Absence Of Preemption Relating To The Pleaded Facts ........ 32

V. CONCLUSION ........ 33

CERTIFICATE OF LOCAL RULE 7.1.d.3 ........ 34

CERTIFICATE OF SERVICE ........ 35

# TABLE OF AUTHORITIES

## CASES


*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*
662 F.3d 376 (5th Cir. 2011) .......... 23, 26, 30

*Aetna Health Inc. v. Davila*
542 U.S. 200 (2004) .......... 14, 15

*Bafford v. Northrop Grumman Corp*.
994 F.3d 1020 (9th Cir. 2021) .......... 23

*Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*
187 F.3d 1045 (9th Cir. 1999) .......... 31

*Bonewitz v. Cigna Corp*.
2015 U.S. Dist. LEXIS 134737 (M.D. Tenn. Oct. 2, 2015) .......... 28

*Briscoe v. Fine*
444 F.3d 478 (6th Cir. 2006) .......... 28

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*
103 F.4th 597 (9th Cir. 2024) .......... 29, 30

*Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*
519 U.S. 316 (1997) .......... 19, 22

*Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*
321 F.App'x 563 (9th Cir. 2008) .......... 31

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*
497 F.3d 972 (9th Cir. 2007) .......... 31

*Ciaramitaro v. UNUM Life Ins. Co. of Am.*
2009 U.S. Dist. LEXIS 103610 (E.D. Mich. Nov. 6, 2009) .......... 28

*City of Hope Nat'l Med. Ctr. v. AFL Hotel & Rest. Workers' Health & Welfare Plan*
446 F.App'x 53 (9th Cir. 2011) .......... 31

*Cromwell v. Equicor-Equitable HCA Corp.*
944 F.2d 1272 (6th Cir. 1991) .......................................................... *passsim*
*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*
520 U.S. 806 (1997) .......................................................................... 17, 19
*District of Columbia v. Greater Wash. Bd. of Trade*
506 U.S. 125 (1992) .......................................................................... 19, 22
*Egelhoff v. Egelhoff*
532 U.S. 141 (2001) .......................................................................... 22
*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Group, Inc.*
532 F. Supp. 3d 956 (S.D. Cal. 2021) .......................................................... 21, 29
*Gobeille v. Liberty Mut. Ins. Co.*
577 U.S. 312 (2016) .......................................................................... 18, 19, 22, 28
*Home Health v. Prudential Ins. Co. of Am.*
101 F.3d 600 (8th Cir. 1996) .......................................................................... 26, 28
*Hospice of Metro Denver, Inc. v. Grp. Health Ins., Inc.*
944 F.2d 752 (10th Cir. 1991) .......................................................................... 26, 28
*Ingersoll-Rand Co. v. McClendon*
498 U.S. 133 (1990) .......................................................................... 20, 31
*K.B. v. Methodist Healthcare - Memphis Hosps.*
929 F.3d 795 (6th Cir. 2019) .......................................................................... 13, 14
*Loffredo v. Daimler AG*
500 F. App'x 491 (6th Cir. 2012) .......................................................................... 14, 16
*Lordmann Enters. v. Equicor, Inc.*
32 F.3d 1529 (11th Cir. 1994) .......................................................................... 27, 28, 30
*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*
581 F.3d 941 (9th Cir. 2009) .......................................................................... 14
*Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*

907 F.3d 948 (6th Cir. 2018) ....................................................................13

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*
857 F.3d 141 (2d Cir. 2017) ....................................................................28

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*
904 F.2d 236 (5th Cir. 1990) ....................................................................23, 28

*N.Y. State Conf. of Blue Cross & BlueShield Plans v. Travelers Ins. Co.*
514 U.S. 645 (1995) ....................................................................17, 19, 22, 29

*Pac. Recovery Sols. v. United Behav. Health*
481 F. Supp. 3d 1011 (N.D. Cal. 2020)....................................................................29, 31

*Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*
2024 U.S. App. LEXIS 13227 (2d Cir. June 3, 2024) ....................................................................29, 31

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*
967 F.3d 218 (3d Cir. 2020) ....................................................................25, 28, 30

*Rutledge v. Pharm. Care Mgmt. Ass'n*
592 U.S. 80 (2020) ....................................................................18, 19

*Self-Insurance Inst. of Am., Inc. v. Snyder*
761 F.3d 631 (6th Cir. 2014) ....................................................................22, 23

*Shaw v. Delta Air Lines*
463 U.S. 85 (1983) ....................................................................17

*Smith v. Provident Bank*
170 F.3d 609 (6th Cir. 1999) ....................................................................23

*Univ. of Toledo Physicians, LLC v. Med. Mut. of Ohio*
2009 U.S. Dist. LEXIS 53631 (N.D. Ohio June 25, 2009)....................................................................33

*Ward v. Alt. Health Delivery Sys.*
261 F.3d 624 (6th Cir. 2001) ....................................................................15, 16, 29

*Ramsey v. Formica Corp.*
398 F.3d 421 (6th Cir. 2005) ....................................................................28

**STATUTES**

29 U.S.C § 1132 .......... *passim*

29 U.S.C. § 1144 .......... *passim*

## STATEMENT OF ISSUES PRESENTED

1) Are Plaintiffs' state law misrepresentation claims which are specifically pled to not be based on Patient's health plan, could not in any way be asserted by Patient, and are solely based on Blue Cross Blue Shield of Michigan's representations on behalf of La-Z-Boy Inc. preempted by the Employee Retirement Security Act of 1974 ("ERISA") § 502(a), 29 U.S.C § 1132(a) ("Section 502")?

   Plaintiffs' Answer: No

   La-Z-Boy's Answer: Yes

   Blue Cross Blue Shield of Michigan's Answer: Yes

2) Are Plaintiffs' state law misrepresentation claims which are specifically pled to not be based on Patient's health plan, could not in any way be asserted by Patient, and are solely based on Blue Cross Blue Shield of Michigan's representations on behalf of La-Z-Boy Inc. preempted ERISA § 514(a), 29 U.S.C § 1144(a) ("Section 514")?

   Plaintiffs' Answer: No

   La-Z-Boy's Answer: Yes

   Blue Cross Blue Shield of Michigan's Answer: Yes

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

As to ERISA Section 502, 29 U.S.C § 1132(a)

*K.B. v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795 (6th Cir. 2019)

*Ward v. Alt. Health Delivery Sys.*, 261 F.3d 624 (6th Cir. 2001)

As to ERISA 514, 29 U.S.C § 1144(a)

*Rutledge v. Pharm. Care Mgmt. Ass'n,* 592 U.S. 80 (2020)

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011)

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218 (3d Cir. 2020)

*Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994)

*Home Health v. Prudential Ins. Co. of Am.*, 101 F.3d 600 (8th Cir. 1996)

## I. INTRODUCTION

Advanced Weight Loss Surgical Associates represented by Dr. Michael Feizbakhsh ("Advanced" or "Dr. Feizbakhsh"), Minimally Invasive Surgical Associates represented by Dr. Sean Rim ("MISA" or "Dr. Rim"), Bay City Surgery ("Bay") and Town Center Surgery ("TSC") (together "Medical Providers")[1] provided quality of life preserving medical services for a member and enrollee ("Patient") of a health insurance policy funded by La-Z-Boy Incorporated ("LZB") and operated by Blue Cross Blue Shield of Michigan ("BCBS") on behalf of LZB (LZB and BCBS together will be referred to as "Defendants"). Patient independently sought out Medical Providers' services for Medical Providers' excellence, relying on Medical Providers to restore and improve Patient's quality of life. Medical Providers delivered.

Prior to providing services, Medical Providers called the number on Patient's insurance card. Medical Providers then sought and received oral promises for payment from BCBS on behalf of LZB for each and every procedure to be performed on Defendants' member/Medical Providers' Patient, including but not limited to that payment would be at the usual, customary and reasonable ("CR" or "UCR") rate. After obtaining these promises, and relying on Defendants' agreement to pay the

[1] Bay and TSC assigned their rights to a Laurel Management Services, Inc. ("Laurel"). Laurel, Dr. Feizbakhsh and Dr. Rim together are referred to as "Plaintiffs".

UCR rate, Medical Providers rendered services to their Patient/Defendants' member.

Defendants and Patient have received their benefit from Medical Providers. Medical Providers are still waiting on Defendants to uphold their representations and promises.

Defendants both move to dismiss Plaintiffs' causes of action solely on the basis that they are preempted by the Employee Retirement Security Act of 1974 ("ERISA"). As will be discussed below, Defendants' argument is wrong and confused, as Medical Providers are not ERISA entities or assignees of ERISA entities and there is not one mention to the health plan or reliance on the health plan (nor need there be) in the First Amended Complaint.

## II. STATEMENT OF THE CASE

"On February 21, 2022, and March 26, 2022, Patient received medical services from Medical Providers." FAC ¶24

"On January 6, 2022, so as to determine whether or not to provide services, Medical Providers' representatives, Emely and Glaiza, spoke with DEFEDANT's representatives, Tammy and Katherine, regarding the Provider Claims. The reference numbers for the calls were I21860342 and I22062440." FAC ¶25.

"Medical Providers asked: what is the Patient's responsibility versus Defendant's responsibility for paying for medical services?" FAC ¶26.

"BCBS on behalf of Defendant represented to Medical Providers that

Patient's deductible is and was $1,100.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $4,400.00 and that to date for that calendar year Patient had paid $0.00." FAC ¶27.

"Medical Providers asked: does Defendant pay based on UCR for procedure codes 43775, 43239, 43281, and 43774, and other similar codes within the same family?" FAC ¶28

"BCBS on behalf of Defendant represented to Medical Providers that for services in connection with procedure codes 43775, 43239, 43281, and 43774, Defendant pays the UCR rate." FAC ¶29

"Medical Providers asked: does Defendant use a Medicare Fee Schedule to pay for procedure codes 43775, 43239, 43281, and 43774?" FAC ¶30

"BCBS on behalf of Defendant represented to Medical Providers that for services in connection with procedure codes 43775, 43239, 43281, and 43774, Defendant's payment is not and would not be based on the Medicare Fee Schedule." FAC ¶31.

A payment based on UCR means that "DEFEDANT and/or BCBS will utilize a medical bill database from Fair Health Inc." FAC ¶20.

This information without any reference to any health plan (again there is not one mention to a health plan anywhere in the FAC) is sufficient for Medical Providers to determine how much they should have been paid for the medical

services. "As Medical Providers had been paid by BCBS at the UCR rate on numerous occasions, Medical Providers relied and provided services solely based on BCBS's representations, promises and statements on behalf of DEFENDANT that payment is and would be at the UCR rate [i.e. based on Fair Health]. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Providers agreed to provide medical services. Medical Providers took BCBS's representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations." FAC ¶39; *see also* FAC ¶10.

"Following the procedure, MEDICAL PROVIDERS submitted their claims to DEFENDANT through BCBS accompanied with lengthy operative reports, chart notes, and other medical records. No matter whether large or small, all of MEDICAL PROVIDERS' claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDERS submitted to DEFENDANT through BCBS any and all billing information and any and all additional information requested by DEFENDANT." FAC ¶40.

"DEFENDANT processed the bills for $342,296.00 and made a payment of $1,598.40." FAC ¶41.

"The amount paid was well below the UCR amount represented during the calls between Medical Providers and BCBS on behalf of DEFENDANT. The amount was based on Medicare." FAC ¶42.

As Plaintiffs had not been paid in accordance with BCBS' representations and promises on behalf of LZB, Plaintiffs filed suit.

## III. LEGAL STANDARD ON 12B6 MOTION TO DISMISS

For the purpose of reviewing a complaint upon a motion to dismiss, "Courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true." *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951 (6th Cir. 2018).

## IV. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA

There are two forms of ERISA preemption: complete preemption under ERISA § 502(a), 29 U.S.C § 1132(a) ("Section 502"), and conflict (or express) preemption under ERISA § 514(a), 29 U.S.C § 1144(a) ("Section 514"). *See K.B. v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019) ("There are two forms of ERISA preemption: express preemption (which applies broadly) and complete preemption (which applies narrowly).").

Neither Section 502 nor Section 514 supports preemption of Plaintiffs' state law claims for different reasons, and Defendants incorrectly conflate[2] and rely on

---

[2] LZB spoke with Plaintiffs and Plaintiffs attempted to explain this to LZB.

both forms of preemption to support a motion to dismiss.

**A. Plaintiffs' Claims Are Not Preempted By ERISA Section 502 Or Complete Preemption**

It is well established in the Sixth Circuit and other Circuits that Section 502 purely addresses the *jurisdiction* of a district court and has no connection to a motion to dismiss. *See e.g. K.B.*, 929 F.3d at 800; *Loffredo v. Daimler AG*, 500 F. App'x 491, 501 (6th Cir. 2012) ("The district court correctly recognized that this argument misunderstands the doctrine of complete preemption. Complete preemption under § 1132(a) is not grounds for dismissal."). "Complete preemption under § 502(a)[,] is really a jurisdictional rather than a preemption doctrine[.]" *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).

Despite the Sixth Circuit making it clear that Section 502 is inapplicable to a motion to dismiss, Defendants identify as the controlling and most appropriate authorities *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) and *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991). Dkt. No. 18, p. 8 (BCBS' Authority); Dkt. No. 19, p. 9 (LZB's Authority). Both cases dealt strictly with removal and a federal court's jurisdiction (i.e. Section 502).

> Appellants present us with two issues relating to the district court's **jurisdiction**: 1) whether the district court

---

BCBS on the other hand never spoke with or actually concurred with Plaintiffs relating to their motion. They sent an email seeking a concurrence and filed their motion on the same day.

> properly granted Equicor's petition for removal; and 2) whether the district court's ultimate determination that appellants lacked standing under ERISA required it to remand the entire case to state court.

*Cromwell*, 944 F.2d at 1277 (emphasis added).

> We hold that respondents' causes of action, brought to remedy only the denial of benefits under ERISA-regulated benefit plans, fall within the scope of, and are completely pre-empted by, ERISA § 502(a)(1)(B), and thus removable to federal district court.

*Davila*, 542 U.S. at 221.

BCBS adds to *Aetna* and *Cromwell*, *Ward v. Alt. Health Delivery Sys*., 261 F.3d 624, 627 (6th Cir. 2001). Dkt. No. 18, p. 8 (BCBS' Authority). However, *Ward* does nothing more than underscore how ERISA Section 502 is completely inapplicable to a motion to dismiss. In *Ward,* the Court reversed the district court's decision relating to the state law claims and remanded them to the state court.

> Plaintiff's state law claims do not fall into this category… none of her state law claims can independently confer federal subject matter jurisdiction. ... We reverse the court's order dismissing plaintiff's state law claims and remand those claims with instructions that the district court in turn remand these claims to the state court.

261 F.3d at 627.

*Ward* further undermines Defendants' authority by indicating that *Cromwell* is not the best case to be relying upon. *Id.* ("Cromwell is a confusing case, and two judges on the Cromwell panel specifically stated that the district court should have

examined the basis of its jurisdiction before considering preemption issues.”).

There is no basis for Defendants’ motions in ERISA Section 502. *Loffredo*, 500 F. App'x at 501; *Ward*, 261 F.3d at 627. Defendants’ nearly complete reliance on Section 502 cases and their indication of the same to the Court shows that they do not understand ERISA preemption and that their motions are without merit. Dkt. No. 18, p. 8 (BCBS’ Authority); Dkt. No. 19, p. 9 (LZB’s Authority).

**B. Plaintiffs’ Claims Are Not Preempted By Section 514 Express/Conflict Preemption.**

There is no authority in the Sixth Circuit which addresses ERISA Section 514 preemption on a motion to dismiss in connection with a claim brought by a non-contracted medical provider against a health plan or insurer based on the direct interactions between the insurer or health plan and its representatives with the non-contracted medical provider. [3]

A history of Supreme Court Section 514 analysis as well as a survey of on point Circuit Court decisions makes clear that Plaintiffs’ claims as alleged in the complaint are not preempted by ERISA.

1. History of ERISA Section 514 Jurisprudence.

ERISA conflict preemption stems from the language of ERISA § 514, 29

[3] *Cromwell* does discuss a similar factual situation and does make reference to Section 514 in its pre-analysis of the actual issues in the case, but it does not adjudicate the issue presented here. *Cromwell*, 944 F.2d at 1276.

U.S.C. § 1144(a), codified in 1974, which reads:

> [T]he provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter ***relate to*** any employee benefit plan.

In 1983, the Supreme Court addressed the unhelpful "relate to" language, explaining the scope of preemption in the first of a series of narrowing decisions, and defining "relate to" as meaning a "connection with or reference to" an ERISA plan. *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983). Over the next forty years, the Supreme Court delineated the confines of ERISA preemption to counter preemption overreach:

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere…." But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("*Travelers*") (original alterations). Relatedness must not be read literally, but instead must be construed pragmatically to achieve the underlying legislative intent; courts "must go beyond the unhelpful ['related to'] text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806,

813-14 (1997).

As articulated by the Supreme Court:

> First, ERISA pre-empts a state law if it has a ***reference to*** ERISA plans. To be more precise, where a State's law acts ***immediately and exclusively*** upon ERISA plans or where the existence of ERISA plans is essential to the law's operation that reference will result in pre-emption. Second, ERISA pre-empts a state law that has an impermissible "***connection with***" ERISA plans, meaning a state law that governs a ***central matter*** of plan administration or interferes with nationally uniform plan administration.

*Gobeille v. Liberty Mut. Ins. Co.,* 577 U.S. 312, 320 (2016) (cleaned up). A "reference to" finding requires that the state law be ***specifically directed*** to the ERISA plan. Where the claim or law applies equally to all insurers "regardless of whether the commercial coverage was ultimately secured by an ERISA plan, private purchase, or otherwise," the claim does not "refer to" an ERISA plan. *Rutledge v. Pharm. Care Mgmt. Ass'n,* 592 U.S. 80, 89 (2020). A "connection with" finding requires the state law to bind an ERISA plan to a ***particular choice*** in its overall administration; where it does not, it has only "indirect economic influence" and is not preempted. *Id*. at 87. "[A]ffect[ing] an ERISA plan or caus[ing] some disuniformity in plan administration [does not create an] impermissible connection with an ERISA plan." *Id*. Similarly, state laws "that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme or substantive coverage" are not pre-empted by ERISA. *Id*. at 88.

Each Supreme Court decision harkens the same singular theme: preemption must be interpreted narrowly and judiciously. *Travelers*, 514 U.S. at 654 ("[D]espite the variety of these opportunities … we have never assumed lightly that Congress has derogated state regulation, … [instead applying the] starting presumption that Congress does not intend to supplant state law."); *De Buono*, 520 U.S. at 814 ("Congress does not intent to supplant state law."); *Gobeille*, 577 U.S. at 319 (Broad ERISA preemption "is a result 'no sensible person could have intended.'") (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 336 (1997) (Scalia, J., concurring)); *Rutledge*, 592 U.S. at 88 ("The logic of *Travelers* decides this case.").

2. As Applied to Plaintiffs' Complaint, There Is Neither "Reference to" Nor "Connection With" Section 514 Preemption.

Defendants do not discuss the prongs of ERISA Section 514 specifically. However, as discussed below, the facts pled in Plaintiffs' complaint do not invoke either the reference to or connection with prongs of Section 514 preemption.

a. No "reference to" preemption.

The Supreme Court has not found "reference to" preemption in any case for over 30 years. As stated, for reference to preemption to apply, Plaintiffs' claims must require the existence of an ERISA plan to make their case or establish and element of their case. *See Rutledge*, 592 U.S. at 88; *District of Columbia v. Greater Wash.*

*Bd. of Trade*, 506 U.S. 125, 131 (1992); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) ("[Plaintiff's] argument misses the point, which is that under the Texas court's analysis there simply is no cause of action if there is no [ERISA] plan.").

Here, Plaintiffs' claims do not require the existence of an ERISA plan and do not need an ERISA plan to exist for their claims to be provable at trial. As alleged specifically in the First Amended Complaint:

> Medical Providers relied and provided services solely based on BCBS's representations, promises and statements on behalf of DEFENDANT that payment is and would be at the UCR rate [i.e. based on Fair Health]. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Providers agreed to provide medical services. Medical Providers took BCBS's representations on behalf of DEFENDANT at face value and provided services based solely on those promises and representations.

FAC ¶39. All Plaintiffs need to prove their case is the information provided on the verification sheet (and perhaps a call recording of the call and information documented on the sheet) and the publicly available Fair Health data. FAC ¶¶17-22, 26-31. If Plaintiffs never see Patient's health plan it will make no difference. *Id*.

BCBS does not argue that the existence of the health plan is essential to Plaintiffs' claims.

LZB does argue that the existence of the plan is necessary for Plaintiffs claims. Of course, LZB does not cite to a Sixth Circuit case, but rather to a Ninth Circuit district court decision in *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Group, Inc.*, 532 F. Supp. 3d 956, 967 (S.D. Cal. 2021), to make this claim. However, a brief review of *Fast Access* shows why the district court found preemption. *See Fast Access*, 532 F. Supp. 3d at 970 ("Specialty also does not specify any promises or assurances that were allegedly made that could function independently of the preapprovals or Patient A's plan."). There was no allegation that payment would be made at the UCR rate and not based on Medicare. *See id.* There was no discussion that UCR means Fair Health. *See id.* There was no allegation of misrepresentation. *See id.* There were none of the specifics presented in the FAC and so the district court was left with either the claim being completely insufficient or relying on the health plan to supplement that information. *See id.* And, it should also be noted that *Fast Access* acknowledges that in some cases like the one here there would be no preemption. *See id.* at 964 ("Some courts have found that breach of contract claims, as well as other types of claims, are not preempted by ERISA…").

BCBS makes no argument and even LZB's limited argument based on *Fast Access* is unsupportable. There is no "reference to" preemption because the pleaded facts show that Plaintiffs do not make any reference to an ERISA plan and certainly do not require its existence to proceed with the case.

b. No "connection with" preemption.

A "'connection with' ERISA plans, mean[s] a state law that governs . . . a central matter of plan administration or interferes with nationally uniform plan administration." *Gobeille,* 577 U.S. at 320 (quoting *Egelhoff v. Egelhoff,* 532 U.S. 141, 148 (2001)). It requires "look[ing] both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Dillingham,* 519 U.S. at 325 (quoting *Travelers,* 514 U.S. at 656-59).

ERISA "connection with" preemption may be proper only where "state laws [] mandate[] employee benefit structures or their administration." *Travelers,* 514 U.S. at 658. Where a state law has "only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability" the law is not preempted. *Id*. at 661 (quoting *District of Columbia,* 506 U.S. at 130 n.1).

The Sixth Circuit in discussing the "connection with" prong states:

> In determining whether a state law has an impermissible connection with ERISA plans, we start with the presumption that Congress did not intend to preempt state laws, particularly in areas of traditional state concern…ERISA does not create a state-law-free zone around everything that affects an ERISA plan. Therefore, [the party claiming preemption] must show that the [relevant law or claim] (1) mandates an aspect of law with which ERISA is concerned, such as the administration of the plan itself, or (2) interferes with the relationship between ERISA-covered entities.

*Self-Insurance Inst. of Am., Inc. v. Snyder*, 761 F.3d 631, 635-636 (6th Cir. 2014), *reaffirmed after reconsideration Self-Insurance Inst. of Am., Inc. v. Snyder*, 827 F.3d 549, 553-54 (6th Cir. 2016).

The Sixth Circuit also found, in a separate context,

> ERISA gives plans the ability to sue and be sued in their own right. See 29 U.S.C. § 1132(d)(1). … When an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law.

*Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir. 1999). The idea of looking to the parties' relationships is very similar to the Fifth Circuit's *Memorial* Test and the Ninth Circuit's relationship test. *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011) (setting forth test articulated in *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 247 (5th Cir. 1990)); *Bafford v. Northrop Grumman Corp*., 994 F.3d 1020, 1031 (9th Cir. 2021) ("We have employed a 'relationship test' in analyzing 'connection with' preemption").

Here, as discussed above, there is not one mention in the FAC to the health plan or reliance on the health plan. Plaintiffs' claims are solely based on the representations made to Medical Providers.

> Medical Providers' promissory estoppel and negligent misrepresentation claims ("Provider Claims") are asserted solely based upon the individual and proper rights of Medical Providers in their own individual capacity and are not derivative of the contractual or other rights of the Medical Providers' Patient. The Provider Claims arise from BCBS's promises on behalf of Defendant during the

> communications between only Medical Providers and BCBS on behalf of Defendant. Patient was not in any way involved in the communications and the promises. Provider Claims are solely based on the promises and representations during those communications. Provider Claims make no reference to or connection with any rights that Patient might have under Patient's health plan. For the Provider Claims, Medical Providers do not in any way seek to enforce the contractual rights of the Medical Providers' Patient, through the Patient's insurance contract, policies, certificates of coverage or other written insurance agreements.

FAC ¶10; *see also* FAC ¶39. The representations alone support Medical Providers and now Plaintiffs' claims for Defendants' misrepresentations which caused medical services to be provided. FAC ¶¶17-22, 26-31. As a result, Plaintiffs' claims do not mandate any form of employee benefit structure or its administration. Plaintiffs are not seeking benefits or anything owed based on the Patient's plan. The damages for those services can be calculated solely from the representations/misrepresentations made as well as industry wide data (Fair Health data). *See id.*

Additionally, Plaintiffs' claims do not have a connection with ERISA as Medical Providers are not ERISA entities and do not assert to stand in the shoes of an ERISA entity. FAC ¶¶10, 39. Medical Providers are third parties who as BCBS acknowledges by its argument have no individual rights or standing under ERISA. Dkt. No. 18, p. 14-15. It cannot be said that Medical Providers' and now Plaintiffs' claims affect the relationship between traditional ERISA entities.

In this vein, the majority of Circuits (if not all) addressing this specific factual

scenario have found that the facts as pled here do not support Section 514 preemption and "connection with" preemption.

In *Plastic Surgery*, the Third Circuit held that the plaintiff medical provider's claims based on oral representations were not preempted as having a "connection with" an ERISA plan because they were not between parties regulated by ERISA:

> ERISA governs relationships among the employer, the plan and its fiduciaries, and the participants and beneficiaries. ***Critically, however, out-of-network healthcare providers "were not . . . party to this bargain***. Health care providers such as the Center orbit the periphery of this bargain, but their rights and remedies are not delineated in ERISA's substantive or remedial provisions. For this reason, the Courts of Appeals have overwhelmingly held that claims akin to the Center's are not expressly preempted because, as pleaded, ***they arise out of a relationship ERISA did not intend to govern at all***. [citing cases].

*Plastic Surgery*, 967 F.3d at 236-37 (emphasis added) (cleaned up); *id*. at 237 ("the Center alleges that Aetna must pay the costs of these services only because, and to the extent, it promised the Center that it would"—i.e. a claim not preempted because it arose out of an obligation independent from the plan") (citations omitted).

Each of the Fifth, Eighth, Tenth, and Eleventh Circuits is in accord, holding that a medical provider's claim for payment from the plan based on separate representations are not preempted:

> The state law underlying Access's misrepresentation claims does not purport to regulate what benefits United provides to the beneficiaries of its ERISA plans, but rather

> what representations it makes to third parties about the extent to which it will pay for their services. To prevail on these claims, ***Access need not show that United breached the duties and standard of conduct for an ERISA plan administrator, because Access's alleged right to reimbursement does not depend on the terms of the ERISA plans***. It is immaterial whether the alleged statements regarding the extent that the patients' plans covered Access's services were correct or incorrect as descriptions of the plans' terms. As assurances of how much Access would be paid, the statements are belied by United's subsequent refusal to reimburse some or all of Access's claims.

*Access*, 662 F.3d at 385 (5th Cir.) (emphasis added).

> Home Health is not suing for plan benefits. ***It is suing for Prudential's misrepresentation*** that Rich had not exceeded his $1 million limit of benefits. … Allowing Home Health to proceed with its claim for negligent misrepresentation ***would not negate any plan provision***.

*Home Health v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 605 (8th Cir. 1996) (emphasis added).

> Hospice, however, is ***not a participant or a beneficiary*** as enumerated in the Supreme Court opinion or in the statute itself ... we conclude that a state law claim which does not affect the "relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries" as such, ***is not preempted by ERISA***.

*Hospice of Metro Denver, Inc. v. Grp. Health Ins., Inc.*, 944 F.2d 752, 755-56 (10th Cir. 1991) (emphasis added).

> ***[H]ealth care providers [are] parties beyond ERISA's scope*** … a health care provider's claim against a provider of insurance under the plan affects the relationship

> between the principal ERISA entities at best only indirectly. … [W]e hold that ***ERISA does not preempt a health care provider's negligence misrepresentation claim against an insurer under an ERISA plan***."

*Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529, 1533-34 (11th Cir. 1994) (emphasis added).

Each of these circuits—along with the Second Circuit—has also found that preempting a medical provider's state law claims would undermine legislative intent. As summarized by the Third Circuit, citing to the Supreme Court and the Fifth, Eighth, and Eleventh Circuits:

> But ***protection of plan participants and beneficiaries is not advanced by extending express preemption to out-of-network providers*** and limiting their universe of remedies to those outlined in section 502(a). …
> Although Congress has narrowed the universe of remedies available to participants and beneficiaries, we ***will not assume that it intended simultaneously to strip healthcare providers***, such as the Center, of any meaningful remedy, particularly where the guidance from the Supreme Court, though limited, indicates otherwise. *See Mackey*, 486 U.S. at 834 (1988) (holding that ERISA does not preempt "state-law methods for collecting money judgments … [because] otherwise, there would be no way to enforce such a judgment won against an ERISA plan").
> ***Indeed, if anything, that would disserve ERISA's statutory objectives***. To accept Aetna's argument would be to accept the ***troubling proposition*** that an out-of-network provider's right to recourse may be bargained away by insurers and plan participants in the terms of an ERISA plan to which the provider is not a party and which it likely has had no opportunity to review before it provides care. ***It would in effect allow insurers to***

> ***illegitimately supplement their provider network by making promises of payment to induce the provision of services, safe in the knowledge that those out of network would have no recourse for breach of those promises***. The consequence, as recognized by other Courts of Appeals, would be for providers to begin to require up-front payments from patients or to "deny care or raise fees to protect themselves against the risk of noncoverage." *Lordmann*, 32 F.3d at 1533; *accord In Home Health*, 101 F.3d at 606-07; *Mem'l Hosp.*, 904 F.2d at 247-48. That is a far cry from "protect[ing] plan participants and beneficiaries." *Gobeille*, 136 S. Ct. at 943 (citation omitted). "[T]he objectives of the ERISA statute," *id.*, thus also indicate the Center's claims do not have an impermissible "connection with" the ERISA plans.

*Plastic Surgery*, 967 F.3d at 238-39 (3d Cir.) (emphasis added). The Tenth, and Second Circuits are also in agreement. *See Hospice of Metro Denver*, 944 F.2d at 756; *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017).

In opposition to this weight of on point Circuit authority, BCBS puts forth caselaw dealing solely with one ERISA party (usually the insured) suing another ERISA party (usually the employer or administrator)[4] and *Cromwell*. BCBS' non-

---

[4] *Briscoe v. Fine*, 444 F.3d 478, 484 (6th Cir. 2006) ("Lead plaintiff William "Jack" Briscoe was an hourly employee" suing "the Fine family and PHP" the employers and administrator); *Ramsey v. Formica Corp.*, 398 F.3d 421, 422 (6th Cir. 2005) ("Plaintiffs and putative class members are former employees of Formica Corporation and participants in Formica's benefit pension plan."); *Ciaramitaro v. UNUM Life Ins. Co. of Am.*, No. 09-CV-13492, 2009 U.S. Dist. LEXIS 103610, at *6 (E.D. Mich. Nov. 6, 2009) ("she is covered under an Unum long-term disability group policy as an employee of Greektown Casino"); *Bonewitz v. Cigna Corp.*, No. 3:14-cv-02281, 2015 U.S. Dist. LEXIS 134737, at

medical provider cases are irrelevant as the relationships at issue here are not one between ERISA parties. With respect to *Cromwell*, there are many bases for distinction. In *Cromwell*, the plaintiff alleged an assignment from the patient and so the medical provider clearly was seeking benefits under the plan. Also, the question presented in *Cromwell* was not Section 514 preemption. And, *Cromwell* was decided before the Sixth Circuit was afforded with the analysis from the Supreme Court in *Travelers*[5].

Understanding that cases involving solely ERISA entities are wholly irrelevant, LZB adds to *Cromwell*, *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597 (9th Cir. 2024) ("*Bristol*"), *Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, Nos. 23-1134-cv (L), 23-1135-cv (Con), 2024 U.S. App. LEXIS 13227 (2d Cir. June 3, 2024), *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Group, Inc.*, 532 F. Supp. 3d 956, 967 (S.D. Cal. 2021)[6] and *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011 (N.D. Cal. 2020).

In *Bristol*, the Ninth Circuit distinguished itself from many of the Circuit cases

---

*4 (M.D. Tenn. Oct. 2, 2015) ("Plaintiff worked for Zotec as a business intelligence analyst").

[5] And, as mentioned, the Sixth Circuit itself has called into question the analysis in *Cromwell* in many respects. *See Ward*, 261 F.3d at 627

[6] As discussed above, *Fast Access* is not supportive.

cited by Plaintiffs above leaving open the factual scenario that a case based on a misrepresentation would not be preempted by ERISA.

> Some circuits have permitted providers' state law claims for misrepresentation of health coverage to proceed when the patients were covered by an ERISA plan, but—contrary to the insurer's representations—lacked coverage for the specific treatment rendered. *See, e.g., Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 224 (3d Cir. 2020); *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383-84 (5th Cir. 2011); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533-34 (11th Cir. 1994). This line of authority is likewise distinguishable from this case. Here, there is no evidence that the 106 patients in question were ineligible for coverage at the time of the verification and authorization calls, or that Cigna misrepresented patient coverage, or the extent of coverage, during the calls."). The plaintiff was asserting an assignment from the patients. *Id.* at 603 ("That Bristol's claims have a 'reference to' the Cigna-administered ERISA plans is only further confirmed by the fact that Bristol has brought a parallel claim for the denial of ERISA benefits as the plan participants' assignee.

*See*, 103 F.4th at 607. Further, the plaintiff in *Bristol* admitted that ultimately the plan language was the final arbiter of the amount to be paid. *Id.* ("Bristol specifically invokes Cigna's plan terms to supersede any representations that Cigna made on the calls, arguing in its opening brief that, '[t]o the extent any stated percentages Cigna set forth on the verification calls are inconsistent with the plans' documents, **the plan payment rate may potentially apply** …'") (emphasis added).

Also, *Bristol* was not attempting change the law in the Ninth Circuit and there

are at least four Ninth Circuit cases which support the absence of preemption here. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007); *Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999); *City of Hope Nat'l Med. Ctr. v. AFL Hotel & Rest. Workers' Health & Welfare Plan*, 446 F.App'x 53, 54 (9th Cir. 2011); *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F.App'x 563, 564 (9th Cir. 2008).

Next, in *Park Ave.*, the Second Circuit in an unpublished decision felt it didn't need to address any other Circuit authority or even any Supreme Court authority within the last 35 years (most recent citation being *Ingersoll-Rand* from 1990) because the plaintiffs admitted that payment was tied to the plan. *See*, 2024 U.S. App. LEXIS 13227, at *4 ("In explaining its entitlement to reimbursement, PAPC relies on the plan, alleging that '[n]ot all plans provide out-of-network benefits, but when they do Cigna determines the amount Cigna will allow for a covered service to an out-of-network provider." PAPC Compl. 20.").

And, again in *Pac. Recovery*, a district court decision from the Ninth Circuit, it was clear from the allegations in the complaint that the claims were still tied to the health plan and that a review of the plan would be needed to determine the payment rate. 481 F. Supp. 3d at 1030.

Here, Plaintiffs are clear that they are not seeking anything by way of the

Patient's rights or the health plan and that the health plan is irrelevant to the analysis. FAC ¶¶10, 39.

The vast majority of the Circuits supports that there is no preemption under the facts pled by Plaintiffs and Plaintiffs respectfully suggests that this Court follow the majority of the Circuits and find there is no "connection with" preemption here as well.

### C. BCBS' Standing Argument Completely Misses The Mark And Further Supports The Absence Of Preemption Relating To The Pleaded Facts.

BCBS argues that Plaintiffs do not have standing to bring an ERISA claim. This is plainly true. Plaintiffs do not attempt to assert an ERISA claim. Plaintiffs specifically only plead state law claims belonging solely to Plaintiffs. BCBS' argument however shows that Plaintiffs' claims should not be preempted by ERISA as BCBS acknowledges that no ERISA claim is being invoked and that Plaintiffs simply do not have standing to bring an ERISA claim. This similarly supports that *Cromwell* is not applicable to Plaintiffs' claims.

> The outcome might be different in the instant case if Plaintiffs alleged that they received a valid assignment of ERISA benefits. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991). But Plaintiffs make no such claim in their Complaint. Plaintiffs do not cite to the terms of employee benefit plans between Defendant and insureds as the basis of their breach of contract claim, nor do Plaintiffs purport to exercise any of

> their patients' rights under ERISA. Rather, Plaintiffs cite solely to the Participation Agreement. Even if Plaintiffs' recovery may rest upon a patient's participation in an employee plan, that fact alone does not make Plaintiffs beneficiaries or participants in the plan.

*Univ. of Toledo Physicians, LLC v. Med. Mut. of Ohio*, No. 3:09 CV 1220, 2009 U.S. Dist. LEXIS 53631 (N.D. Ohio June 25, 2009),

## V. CONCLUSION

Plaintiffs respectfully request that Defendants' Motions to Dismiss relating solely to ERISA preemption be denied. If the Court finds any merit to Defendants' arguments, Plaintiffs request that Plaintiffs be granted leave to amend. *See Parchman v. SLM Corp*., 896 F.3d 728, 736 (6th Cir. 2018).

Dated: March 19, 2025

Respectfully submitted,

LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
Jonathan A. Stieglitz
Attorneys for Plaintiffs,
Laurel Hill Management Services, Inc.; Advanced Weight Loss Surgical Institute' Minimally Invasive Surgical Institute.

# CERTIFICATE OF LOCAL RULE 7.1.d.3

This is to certify that the brief supporting the response to both Defendants' motions is no more than 25 pages including footnotes and signatures.

Dated: March 19, 2025

Respectfully submitted,

LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
Jonathan A. Stieglitz
Attorneys for Plaintiffs,
Laurel Hill Management Services, Inc.; Advanced Weight Loss Surgical Institute' Minimally Invasive Surgical Institute.

## CERTIFICATE OF SERVICE

This is to certify that on March 19, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

Dated: March 19, 2025

Respectfully submitted,

LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
Jonathan A. Stieglitz
Attorneys for Plaintiffs,
Laurel Hill Management Services, Inc.; Advanced Weight Loss Surgical Institute' Minimally Invasive Surgical Institute.