UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREL HILL MANAGEMENT SERVICES,
INC., MINIMALLY INVASIVE SURGICAL
ASSOCIATES, and ADVANCED WEIGHT
LOSS SURGICAL ASSOCIATES,

        Plaintiffs,

v.

LA-Z-BOY INCORPORATED, BLUE
CROSS BLUE SHIELD OF MICHIGAN,
and DOES 1-10,

        Defendants.
_____/

Case Number 24-13230
Honorable David M. Lawson

### OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DISMISSING CASE WITH PREJUDICE

The plaintiffs, various medical providers, filed a complaint in California state court pleading negligent misrepresentation and promissory estoppel based on allegations that the defendants misrepresented that medical expenses to be incurred by one of defendant La-Z-Boy's employees would be covered under the defendant's medical plan and paid according to a certain schedule. After the medical care was furnished and full payment was refused, this lawsuit was commenced. The case found its way to federal court, and the defendants moved to dismiss it on the ground that the state law claims relate to a medical plan governed by the Employee Retirement Income and Security Act of 1972 (ERISA), which contains a section preempting such state law claims. The motion is fully briefed, and oral argument will not assist in its resolution. The Court will decide the motions on the papers submitted. E.D. Mich. LR 7.1(f)(2). Because the plaintiffs' claims relate to La-Z-Boy's ERISA-governed employee welfare plan, they are expressly preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a), and the plaintiffs have not stated

claims for which relief can be granted. The motions to dismiss will be granted and the case will be dismissed.

I.

The underlying historical facts are undisputed for the purposes of the present motions, which present a pure question of law based on assumed facts as alleged in the pleadings.

The plaintiffs are several medical providers operating in the State of California. Defendant La-Z-Boy Inc. provides healthcare insurance to its employees through defendant Blue Cross Blue Shield of Michigan, which administers La-Z-Boy's self-funded ERISA-governed healthcare benefit plan.

In February and March 2022, plaintiffs provided unspecified medical services to a beneficiary identified by the pseudonym "AA." The plaintiffs are "out-of-network" providers from the standpoint of the healthcare plan, which means they have no contract with Blue Cross providing for payment at specified contractual rates. Due to the absence of a provider agreement, the plaintiffs' staff contacted Blue Cross before providing services to verify that AA was covered and to inquire about the rates that would be paid for specific procedures. Blue Cross representatives stated during telephone calls that coverage was available, the patient would be responsible for an $1,100 deductible, services would be subject to an out-of-pocket maximum of $4,400, and payment for all of the services proposed would be made at the "Usual and Customary Rate" (UCR). The plaintiffs say that the UCR comprises a schedule of standard rates for medical services published by non-party Fair Health, Inc. and widely adhered to in the healthcare industry.

After the services were provided, plaintiffs submitted claims totaling more than $342,000. Despite the verbal agreement, the defendant processed the claims and paid less than $1,600 toward the bills.

The plaintiffs then initiated suit in the Los Angeles County, California Superior Court on March 19, 2024. The case was removed to the Central District of California in May 2024. On December 4, 2024, based on a stipulation by the parties, the case was transferred to the Eastern District of Michigan. The plaintiffs filed an amended complaint on January 24, 2025, which pleads claims for negligent misrepresentation and promissory estoppel under state law, and the plaintiffs seek declaratory and compensatory relief awarding them damages and compelling Blue Cross to pay the UCR for the provided services.

II.

Both defendants cite Federal Rule of Civil Procedure 12(b)(6) and argue that the amended complaint does not plead viable claims because the plaintiffs' state law claims are preempted by ERISA. When evaluating a motion under that rule, the Court is called upon to determine if the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). When reviewing the motion, the Court "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A complaint that is based on state law causes of action that are preempted by federal law fails that test.

"ERISA was enacted 'to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures.'" *Rutledge v. Pharm. Care*

*Mgmt. Ass'n*, 592 U.S. 80, 86 (2020) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U. S. 312, 320-321 (2016)). "In pursuit of that goal, Congress sought 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law,' thereby 'minimiz[ing] the administrative and financial burden of complying with conflicting directives'" and ensuring that plans do not have to tailor substantive benefits to the particularities of multiple jurisdictions." *Ibid.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

Congress implemented the uniform enforcement mechanism in two ways. First, it created federal causes of action in section 502(a) that form "a carefully integrated civil enforcement scheme," *Ingersoll-Rand*, 498 U.S. at 137 (cleaned up), allowing plan beneficiaries and participants to recover benefits and enforce plan terms. And second, it enacted a broad express preemption provision in section 514(a), which "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see Ingersoll-Rand*, 498 U.S. at 138. Section 514(a)'s reach is not limited to state legislative enactments; it also applies to "a state law cause of action[, which] is preempted if 'it has connection with or reference to [an ERISA-governed] plan.'" *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991) (quoting *Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 730, 732-33 (1985)); *see also Shaw v. Delta Airlines, Inc.,* 463 U.S. 85 (1983). In other words, "ERISA preempts state law and state law claims that 'relate to' any employee benefit plan as that term is defined therein." *Ibid.* (citing 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41 (1987)).

The question presented here is whether the plaintiffs' negligent misrepresentation and promissory estoppel claims "relate to" La-Z-Boy's employee medical plan, which admittedly is governed by ERISA. They do.

"'[A] state law relates to an ERISA plan if it has a connection with or reference to such a plan.'" *Ibid.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)). In an attempt further to explicate the phrase "relates to," the Sixth Circuit has instructed lower courts "that the express-preemption inquiry should 'consider the kind of relief that plaintiffs seek, and its relation to the [benefit] plan.'" *Lowe v. Lincoln Nat'l Life Ins. Co.*, 821 F. App'x 489, 492 (6th Cir. 2020) (quoting *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005)). The court of appeals has identified "three specific classes of state laws that [are] preempted by ERISA." *Ibid.* Those are laws "that (1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Ibid.* (quoting *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) (*PONI*)). This analytical framework also has been applied by the court of appeals when analyzing whether a state law *claim* is preempted by ERISA. *Briscoe v. Fine*, 444 F.3d 478, 497-98 (6th Cir. 2006) ("Under the framework articulated in *PONI*, if the plaintiffs' state-law claims of fraud, misrepresentation, and concealment against the Fines and PHP, and of conversion against PHP, fall into any one of the three *PONI* categories, they are preempted by ERISA."). The Sixth Circuit repeatedly has "held that [state law] claims [sounding in] 'negligent misrepresentation' and 'breach of contract,'" where such claims have as their object the recovery of allegedly unpaid or underpaid benefits, "are 'at the very heart of issues within the scope of ERISA's exclusive regulation,' thus warranting preemption." *Mazur v. UNUM Ins. Co.*, 590 F. App'x 518, 521 (6th Cir. 2014) (quoting *Cromwell*, 944 F.2d at 1276); *see also Aldridge v. Regions Bank*, --- F.4th ---, No. 24-5603, 2025 WL 1983483, at *6 (6th Cir. July 17, 2025) (observing that "[u]nder this purpose and effects approach, the [Supreme] Court typically finds that a preemptive

- 5 -

'connection' exists when state laws touch matters that ERISA already covers. Of most relevance, the Court has held that plan participants may not seek benefits under an ERISA-covered plan using state-law contract and tort claims").

The essence of the plaintiffs' claims in their amended complaint is that they were misled by Blue Cross representatives when they inquired about the amounts and rates of payment they could expect for the medical services to be provided to AA, a La-Z-Boy employee. The pleading recounts a conversation between the plaintiffs' representative and a Blue Cross employee about the employee's responsibility for medical bills compared to the employer's, and the method the plan administrator would use to calculate an approved fee for services. Amend. Compl. ¶¶ 26-31, ECF No. 11, PageID.34-35. This information could only relate to La-Z-Boy's medical benefit plan, as that defendant could have no other obligation to pay for the cost of medical care for the employee otherwise. The plaintiffs acknowledge as much when they allege that they were never informed about plan limitations. *Id.* ¶¶ 33-34 ("33. At no time prior to the provision of services to Patient by MEDICAL PROVIDERS were MEDICAL PROVIDERS advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate. 34. BCBS on behalf of DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDERS on notice of any reduction in the originally stated payment percentage."). Their expectation that they would be paid usual and customary rates — UCR — according to the amended complaint, was based on the explanation they received from a Blue Cross representation on how the plan benefits would be administered. *See id.* ¶¶ 35-36.

This case, therefore, is governed by *Cromwell*, where the plaintiff medical provider sued a patient's employer alleging breach of contract, negligence, and promissory estoppel when the employer did not pay for medical services under its employee medical plan as it promised. 944 F.2d at 1275. Payment was refused because the employee was no longer employed. The court held that those claims were preempted by section 514(a) of ERISA. *Id.* at 1276 ("[A]ppellants' state law claims are at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan. Clearly, appellants' claims are preempted by ERISA."). The same holds true here. *Ibid.* ("Such claims are preempted if they 'relate to' an ERISA plan whether or not they were so designed or intended.").

The plaintiffs attempt to read ambiguity or inapplicability into the controlling cases, but, contrary to their argument, *Cromwell* remains good law and has been cited routinely in recent decisions concluding that state law claims relating to an employee benefit plan are preempted. *E.g.*, *Merritt v. Flextronics Int'l USA, Inc.*, No. 23-5549, 2024 WL 5074876, at *2 (6th Cir. July 3, 2024) ("Merritt asserted state-law claims for breach of contract, misrepresentation, bad faith, and fraud against Hartford. Those state-law claims are related to Merritt's employee benefit plan and are just the sort of claims that ERISA preempts.") (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 214 (2004); *Pilot Life Ins.*, 481 U.S. at 48, 57; *Hogan v. Jacobson*, 823 F.3d 872, 879-83 (6th Cir. 2016); *Smith v. Provident Bank*, 170 F.3d 609, 613-14 (6th Cir. 1999); *Cromwell*, 944 F.2d at 1276). And *Cromwell* plainly held that claims such as those presented here are preempted. *Cromwell*, 944 F.2d at 1276.

The plaintiffs attempt to avoid this reality by characterizing their claims as independent of any ERISA plan, contending that they do not rely on La-Z-Boy's plan to make their case. But in

the rare instances where state law claims by medical providers were allowed to proceed, it was where the claims arose entirely from a separate contract between a provider and plan administrator governing a course of dealing having nothing to do with the payment of benefits under a specific plan or connected with a specific claim. *E.g.*, *RAI Care Centers of Michigan I, LLC v. Admin. Sys. Rsch. Corp. Int'l*, No. 17-1142, 2021 WL 5924341, at *3 (W.D. Mich. Mar. 8, 2021) (holding that a breach of contract plan between a healthcare provider, which was not an ERISA entity, and a business that agreed "to use its best efforts to resolve payment disputes [by] . . . create[ing] and maintain[ing] a functioning healthcare network" did not relate or require reference to an ERISA plan).

The plaintiffs also rely heavily on *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218 (3d Cir. 2020), where the Third Circuit confronted a case involving a plan that provided no coverage at all for out-of-network services. The plaintiffs, out-of-network medical providers, alleged that they struck a deal with an insurer to cover medical services that admittedly were not covered by an employee medical plan. The court concluded that claims based on prior false assurances of coverage could proceed because the claims did not relate to the plan; instead, they "sought to enforce a single standalone agreement that made no mention of the plan and explicitly identified the discrete services to be performed and the dollar amount for those services." *Id.* at 229. The court reasoned that because the medical providers had submitted payment requests that were denied entirely due to the lack of coverage, as acknowledged in advance, there was no need to reference the plan to determine the claims. *Id.* at 231 ("The claims here, on the other hand, arose precisely because there was no coverage under the plans for services performed by an out-of-network provider like the Center. . . . Thus, absent a separate agreement between Aetna and the Center, there was no obligation for the Center to provide services to the plan participants, no

obligation for Aetna to pay the Center for its services, and no agreement that compensation would be limited to benefits covered under the plan."). The plaintiffs have not alleged any such "stand-alone" agreement in this case that does not relate to La-Z-Boy's plan.

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017), likewise is distinguishable. There, the Second Circuit found that a claim that the benefit administrator misrepresented that coverage was available and benefits would be paid was not preempted where it was alleged that the claim later was denied entirely because the plan had a provision prohibiting an assignment of benefits to a medical provider. The alleged misrepresentation was that benefits would be paid at all, based on a failure to disclose the non-assignment prohibition that later resulted in a total denial of payment. *Id.* at 144 ("The claim form has two sections that concern the assignment of payment for medical benefits. . . . The parties do not dispute that the patient signed both of the completed forms submitted by McCulloch [including affirmations assigning benefits]. . . . The patient's health care plan, however, has an anti-assignment provision.").

In *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011), *reaffirmed on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012), the Fifth Circuit allowed claims to proceed where the allegation was of a misrepresentation that benefits would be paid, when in fact the plan did not provide reimbursement for the services in dispute regardless of whether coverage was available. *Id.* at 385 ("The merits of Access's misrepresentation claims do not depend on whether its services were or were not fully covered under the patients' plans. . . . Access may [] seek to prove its misrepresentation claims by showing that United's statements regarding coverage, while accurate, were nevertheless misleading because United's agents omitted to mention that, covered or not, Access's services would not be reimbursed."). But that case provides no help to

the plaintiffs here, who complain not about the availability of coverage but rather focus their grievance on the rate and method of calculating payment under the plan.

Similarly, in *In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600 (8th Cir. 1996), the plaintiff alleged that the defendant plan failed to disclose that the beneficiary already had exhausted the $1 million limit for total reimbursement under the plan, which again led to a denial of payment based on the total exclusion of coverage. *Id.* at 605 ("Home Health is not suing for plan benefits. It is suing for Prudential's misrepresentation that Rich had not exceeded his $1 million limit of benefits."). The same sort of claim was presented in *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994), where a hospital was informed prior to admission of a patient that coverage would be forthcoming, only to have more than $100,000 in claims denied when the plan administrator later determined that the patient was ineligible for benefits. *Id.* at 1533 ("Memorial Hospital presented facts very similar to Lordmann's. In that case, Gloria Echols, a covered dependent under a health insurance policy issued by Northbrook Life Insurance Company, sought care at Memorial Hospital. The hospital telephoned Northbrook Life to verify Echols's coverage, and a Northbrook Life employee confirmed that Echols was covered. The hospital then admitted Echols, who remained in the hospital for two months at a cost of more than $100,000. When the hospital submitted its bill, Northbrook Life informed the hospital of Echols's ineligibility and denied the claim. The hospital sued, alleging among other claims a violation of Texas Insurance Code article 21.21, which the court characterized as a Texas codification of negligent misrepresentation."). The facts of that case do not track the present matter. But they do resemble the facts in *Cromwell*, where coverage was denied because the employee left the employer's workforce. 944 F.2d at 1275. Even if *Lordmann Enterprises* helped the plaintiffs, *Cromwell* dictates a different result and must be followed in this circuit.

Again, in *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.*, 944 F.2d 752 (10th Cir. 1991), also cited by the plaintiffs, the dispute was over an allegedly false representation that coverage existed coupled with a subsequent denial due to absence of coverage. *Id.* at 754-55 ("If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. . . . A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.").

Finally, the plaintiffs cite *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995), and they attempt to cast it as having altered the landscape of preemption jurisprudence. However, the question presented in that case was whether a state statute that imposed certain surcharges on payments for hospital services by all plan providers except Blue Cross and Blue Shield was preempted by ERISA. The Court concluded that the regulation, which applied uniformly across the board to health plans without regard to any particular plan's terms, was not preempted. *Id.* at 649 ("We hold that the provisions for surcharges do not 'relate to' employee benefit plans within the meaning of ERISA's pre-emption provision, § 514(a), 29 U.S.C. § 1144(a), and accordingly suffer no pre-emption."). The analysis of that sort of industry-wide regulation has no applicability in this case, which concerns individual claims for alleged underpayments of benefits under a specific plan. *Travelers* did not even cite — and certainly did not overrule — the controlling law set down in *Cromwell*.

None of the cases cited by the plaintiffs are controlling on the question presented here, which is whether the plaintiffs' negligent misrepresentation and promissory estoppel claims that arose from apparent wrong advice about the rate and manner of payment under La-Z-Boy's

medical benefit plan for services provided to employee AA.  Those cases all are distinguishable on other grounds.

Based on the allegations in the amended complaint, the inescapable conclusion is that the plaintiffs' claims relate to an ERISA-governed medical benefit plan and are preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a).

III.

Because the plaintiffs' claims are expressly preempted by section 514(a) ERISA, the amended complaint fails to state a claim upon which relief can be granted.

Accordingly, it is **ORDERED** that the defendant's motions to dismiss (ECF Nos. 18, 19) are **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   August 4, 2025